IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEX PRODUCTS, INC., | No. C 05-05126 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS DEFENDANT HOGHTELING FOR LACK OF JURISDICTION AND DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER AS TO DEFENDANT BASIC COMFORT, INC.** |
| v. | |
| BARBARA HOUGHTELING, et al., | |
| Defendants. | |

On May 19, 2006, the Court heard argument on defendants' motion to dismiss or transfer. Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court hereby GRANTS the motion to dismiss defendant Houghteling for lack of personal jurisdiction, and DENIES the motion to dismiss or transfer as to defendant Basic Comfort, Inc.

**BACKGROUND**

Plaintiff, Dex Products, Inc. ("Dex"), is a producer of "comfort and safety products for infants, toddlers, and older children," including the "Secure Sleeper Ultra," a sleep positioner for infants. Compl. at ¶ 8. Dex filed this declaratory judgment patent action in December 2005. The patent at issue, U.S. Patent No. 6,877,176 ("the '176 patent"), discloses a cushioned "infant sleep aid that is adapted to elevate the infant's head and torso as well as to maintain the infant in a safe sleeping position." '176 patent, col. 2, lines 30-32. Dex seeks a declaration that it's Secure Sleeper Ultra does not infringe the '176 patent, and that the '176 patent is invalid.

Defendant Barbara Houghteling, a resident of Loveland, Colorado, is the sole inventor and owner of the '176 patent, which issued April 12, 2005. Defendant Basic Comfort, Inc., is a Colorado corporation with it principal place of business in Denver, Colorado. Basic Comfort produces and sells

products based upon the '176 patent, and is the exclusive licensee of the '176 patent. Compl. at ¶¶ 3, 11; *see also* Compl. at Exh. B ("The '176 Patent is exclusively licensed to Basic Comfort, Inc. . . .")

On May 25, 2005, an attorney representing both Houghteling and Basic Comfort contacted plaintiff's counsel by telephone to inform him that plaintiff's Secure Sleeper Ultra might infringe the '176 patent. Compl. at ¶ 13. Later, on November 23, 2005, defendants' counsel sent plaintiff a cease and desist letter, accusing the Secure Sleeper Ultra of infringing the '176 patent. Compl. at ¶¶ 14-15 & Exh. B. On December 12, 2005, plaintiff filed suit in this Court, seeking a declaratory judgment that the '176 patent is invalid, or, in the alternative, that its product does not infringe the '176 patent.

Defendants now move to dismiss, arguing, first, that the Court lacks personal jurisdiction over Houghteling, who they claim is an indispensable party to this lawsuit, and second, that venue is improper. In the alternative, defendants seek to have this action transferred to Colorado. For the following reasons, the Court DENIES defendants' motion.

**LEGAL STANDARD**

**I.    Jurisdiction**

The parties agree that Federal Circuit law applies to the question whether personal jurisdiction exists over Houghteling. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2002) ("[W]here the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law."). Under Federal Circuit law, "before a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002).

The "applicable statute" authorizing service of process is the California long arm statute. *See id.* at 1350; Fed. R. Civ. P. 4(e). Because the California long arm statute is coextensive with the limits of due process, the "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998).

2

Before a court may exercise jurisdiction over a non-resident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant may meet the minimum contacts requirement in one of two ways. First, a court may exercise "general jurisdiction" over a defendant that has "continuous and systematic" contacts with the forum state. *See LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Second, a court may exercise "specific jurisdiction" where the defendant's contacts with the forum state are "isolated and sporadic" but the cause of action arises out of those contacts. *Id.*

## II. Necessary and Indispensable Party

If the Court lacks personal jurisdiction over Houghteling, it must then decide if Houghteling is a necessary and indispensable party under Federal Rule of Civil Procedure 19. This analysis is conducted under Ninth Circuit law. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998) ("Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law . . . .").

Courts employ a two-step analysis under Rule 19. First, they must determine if the party is "necessary to the suit." Fed. R. Civ. P. 19(a). A party is necessary if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a)(2). The second step is determining whether the party is indispensable. *See* Fed. R. Civ. P. 19(b). This involves a determination "whether in equity and good conscience the action should proceed among the parties before [the Court]."[1] *Id.* Defendants bear the burden of persuasion in arguing for dismissal under Rule

---

[1] Rule 19(b) identifies four factors for courts to consider in making this determination: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping

3

19. *See Clinton v. Babbit*, 180 F.3d 1081, 1088 (9th Cir. 1999).

**III.     Venue**

The venue in a declaratory judgment action concerning patent infringement and validity is governed by the general venue statute, 28 U.S.C.A. §§ 1391(b)-(c). *U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 642 F.2d 193, 195 (9th Cir. 1982). Venue is proper in any judicial district (1) where the defendant resides or (2) where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391(b). For declaratory judgment actions in patent infringement case, section 1391(b)(2) refers to the district where the allegedly infringing actions took place, not the district where the patent owner resides. *See Kawneer*, 642 F.2d at 195-96.

A district court may transfer a civil action either for the convenience of the parties or witnesses or in the interest of justice. 28 U.S.C.A. § 1404(a). However, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**DISCUSSION**

**I.     Personal Jurisdiction**

Plaintiff rests its claim that personal jurisdiction exists over Houghteling solely upon specific jurisdiction. The Federal Circuit considers three factors in determining whether specific jurisdiction exists: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

According to plaintiff, specific jurisdiction exists in this case because its noninfringement claim arises out of the phone call and threatening letter that defendants sent to plaintiff in California. Further,

---

of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

4

plaintiff points to the fact that Basic Comfort sells the "Inclined to Sleep" sleep positioner, a product based on the '176 patent, in California. *See* Saari Decl., ¶ 2 & Ex. A. Plaintiff argues that this litigation is directly related to both of these contacts with California.

The Federal Circuit has long held that a letter threatening litigation is an insufficient basis for asserting personal jurisdiction over a patent holder. *See, e.g.*, *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) ("We have, however, repeatedly held that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee."). In light of this longstanding rule, plaintiff argues that Basic Comfort's sale of a product based on the '176 patent in California is sufficient to confer jurisdiction over Houghteling.

The problem with plaintiff's argument is that it conflates the two defendants. The only action Houghteling has taken in this case was to grant Basic Comfort a license. Pursuant to this license, Basic Comfort chose to market and sell products based on the '176 patent in California. There is no evidence, however, that Houghteling was involved in that decision. Without further evidence of control, plaintiff cannot use Basic Comfort's actions to obtain jurisdiction over Houghteling. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota.").

This case is indistinguishable from the Federal Circuit's decision in *Red Wing*. That case involved a patent on an "athletic shoe [with] improved support and stability for the wearer's heel" owned by Hockerson-Halberstadt, Inc. ("HHI"), a Louisiana corporation located in New Mexico. *Id.* at 1357. HHI did not manufacture any product; its sole business was licensing and enforcing the rights associated with its patents. *Id.* The plaintiff, Red Wing Shoe Co., was a footwear manufacturer located in Minnesota. *Id.* Starting in October 1995, HHI sent Red Wing a series of letters suggesting that Red Wing was infringing one of its patents. *Id.* Red Wing then brought a declaratory judgment action against HHI, alleging noninfringement of the patent, and that the patent was invalid and unenforceable. *Id.* HHI moved to dismiss for lack of personal jurisdiction, the district court granted the motion, and the Federal Circuit affirmed.

5

On appeal, Red Wing based its argument in favor of personal jurisdiction on the three letters from HHI contending that Red Wing was infringing its patent, as well as HHI's licensing activities in Minnesota. *Id.* at 1359. The Federal Circuit specifically noted that "HHI has thirty-four licensees who sell products in Minnesota. Six of those licensees have stores or are registered to do business in Minnesota." *Id.* Despite these contacts, the Federal Circuit found the combination of these factors insufficient to create personal jurisdiction:

> As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction. . . . Standards of fairness demand that HHI be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights. HHI's three letters alone do not create personal jurisdiction in Minnesota.
>
> HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, as stated above, the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant. . . . Red Wing's flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

*Id.* at 1361. As *Red Wing* illustrates, the Federal Circuit has found personal jurisdiction lacking in a case where the asserted minimum contacts were almost identical to this case.

Although plaintiff argues that *Red Wing* is inapplicable, the cases it relies on are all easily distinguishable. The primary case that plaintiff relies on involved a patentee that also produced products based upon its patent, then executed licenses with other companies to distribute those products. *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996). In that case, the Federal Circuit found that the patent holder had deliberately placed its products into the "stream of commerce," knowing full well the locations to which the products would be distributed. *See Id.* ("Spal's marketing agreement and practices with Iowa Export establish a regular distribution channel through which Spal purposefully directed its activities."). Defendants also rely on cases in which the patent holder's contacts with the forum state were far more extensive than the contacts in this case. *See Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (finding sufficient contacts with Washington State where patent holder had "engaged in a program to develop a market in Washington, including founding teaching centers in Seattle staffed by local periodontists, developing

6

1 Washington customer lists through the teaching centers, and advertising in publications distributed to
2 potential Washington customers"); *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (finding
3 that patent holder had sufficient contacts with Ohio based upon exclusive license with Ohio
4 corporation)[2]; *see also Red Wing*, 148 F.3d at 1362 (distinguishing *Akro* on basis that it involved
5 exclusive license with a corporation in the forum state).

6 Thus, the Court concludes that Houghteling's limited contacts with California are insufficient
7 to create the minimum contacts necessary to subject her to personal jurisdiction, and she is accordingly
8 DISMISSED from this action.

## II.  Indispensable Party

In addition to arguing that this Court lacks personal jurisdiction over Houghteling, defendants contend that Houghteling is both a necessary party under Rule 19(a) and an indispensable party under Rule 19(b).

### A.  Necessary Party

Where a patent has been exclusively licensed to another party, the patent owner is a necessary party where it retains substantial rights in the patent that would be impaired by adjudication of the lawsuit. *See Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998)[3]; *Central Tools, Inc. v. Mitutoyo Corp.*, 381 F. Supp. 2d 71, 77 (D.R.I. 2005). Defendants argue that Houghteling retained substantial rights in the '176 patent and is therefore a necessary party; this Court agrees.

According to the Houghteling/Basic Comfort licensing agreement, Houghteling retains the "first opportunity to sue" potential patent infringers, a substantial ownership right. *See Mentor H/S, Inc. v.*

---

[2] *Akro*'s partial reliance on warning letters to establish "minimum contacts" is out of step with other Federal Circuit law. As recently as 2002, the Federal Circuit has held that warning letters and other correspondences alone are not enough to establish personal jurisdiction. *See Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1356 (Fed Cir. 2002).

[3] Although a Federal Circuit case, the *Dainippon* court applied Ninth Circuit law in its analysis of joinder issues.

7

*Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) (holding that exclusive licensee's ability to sue for infringement only after patent owner failed to do so was the "most important" reason why licensee did not possess all substantial rights in the patent); s*ee also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (requirement that licensee *only notify* patent owner prior to filing infringement suit is a "particularly dispositive" indication that full rights had been transferred). Like the exclusive licensee in *Mentor H/S*, Basic Comfort can only file an infringement suit if Houghteling fails to bring an action within 90 days of being notified that possible infringement exists. License Agreement dated June 1, 2002, ¶ O.

Houghtling's retained rights might be impaired by this litigation because she may be collaterally estopped from re-litigating the validity of the patent in future lawsuits. *See Aguilar v. Los Angeles County*, 751 F.2d 1089, 1093 (9th Cir. 1985) (holding that a child was a necessary party to his parents' federal action since a negative decision in parents' proceeding *might* collaterally estop child from re-litigating an important issue in a separate state court action). Whether Houghtling would actually be collaterally estopped from re-litigating the patent's validity is a difficult question[4]; however, *Aguilar* requires only that the party may face collateral estoppel issues and that is clearly the case here.

Because Houghtling retained substantial rights in the patent that may be impaired by this litigation, she is a necessary party.

### B. Indispensable Party

Relying on *Dainippon,* plaintiffs argue that Houghteling is not an indispensable party under the 4-factor Rule 19(b) test. This case is indistinguishable from *Dainippon* except that the patent owner in *Dainippon* was a wholly-owned subsidiary of the exclusive licensee. *Dainippon*, 142 F.3d at 1267. The court deemed this fact "highly relevant" to its decision that the patent owner/subsidiary was not an indispensable party. *Id.*; *see also Dow Chem. Co. v. Exxon*, 139 F.3d 1470, 1479 (Fed Cir. 1998) (finding that patent-holding subsidiary of Exxon need not be joined in an infringement suit because

---

[4]*See Indep. Wireless Tel. Co. v. Radio Corp. Of Am.*, 269 U.S. 459 (1926) (holding that an absent patent owner may be bound by the case's result if the patent owner was given the opportunity to participate)

8

subsidiary's interests were "adequately protected" by Exxon, the exclusive licensee). While the parent-subsidiary relationship does not exist in this case, Houghteling and Basic Comfort's interests are nonetheless sufficiently aligned that Houghteling need not be joined.

The first Rule 19(b) factor requires consideration of the extent to which a judgment in the patent holder's absence would prejudice the parties. Fed. R. Civ. P. 19(b). "Prejudice to an absent party is mitigated when the interests of that party are 'adequately protected by those who are present.'" *Dainippon*, 142 F.3d at 1272 (quoting *In re Allustiarte*, 786 F.2d 910, 919 (9th Cir. 1986)). A patent owner's interests are protected by an exclusive licensee if: (1) the licensee "manifests its obvious concern" over the patents by, for example, contacting suspected infringers and threatening legal action, (2) the patent owner and licensee share a common financial interest in the patent's validity and non-infringement, and (3) the patent owner and licensee share an attorney. *Id.* at 1272.

Each of the above factors is present in this case. Basic Comfort, through counsel, both telephoned Dex to express concern over Dex's possible infringement of the '176 patent and sent Dex a cease-and-desist letter. Compl., ¶¶ 13, 14. Second, as the exclusive, world-wide licensee of the rights to the '176 patent, Basic Comfort has an obvious financial incentive to defend against charges of invalidity and non-infringement. License Agreement, ¶¶ C, D. Third, as in *Dainippon*, Basic Comfort and Houghteling share the same attorney in this action. Houghteling's interests are further protected by the fact that any settlement agreement between Basic Comfort and Dex requires her consent. Licensing Agreement, ¶ O. So, while Houghteling's relationship with exclusive licensee Basic Comfort is not as close as the parent-subsidiary relationship in *Dainippon*, Houghteling's interests are adequately protected by Basic Comfort.

Although defendants argue that *Central Tools*, not *Dainippon*, is the controlling case, *Central Tools* is factually distinguishable from the current case. First, the patent owner in *Central Tools* granted a *non-exclusive* license to the defendant, thus reducing the defendant's incentive to protect the patent's validity. *Central Tools*, 381 F. Supp. 2d at 79. Second, and more importantly, the license provided rights to only one product in a two-product patent claim. *Id.* at 77. Since the licensee had no interest in the second product whatsoever and because the court would have had to invalidate the entire claim (and hence both products) or nothing at all, the patent owner's interest in the second product was not

9

adequately protected. *Id.* at 77-78. Although defendants argue that Houghteling licensed only the "Inclined to Sleep" product, less than the full patent, they fail to indicate which of the '176 patent's 45 claims have been retained by Houghteling. Moreover, since this Court could invalidate the "Inclined to Sleep" claims without invalidating the entire patent, defendants would need to demonstrate that Houghteling, like the patent owner in *Central Tools*, retained a partial interest in an single claim. *See id.* They have not done so.

The second Rule 19(b) factor, the Court's ability to shape relief to avoid prejudice, also militates in favor of Dex. In *Dainippon*, the court noted that "the second factor . . . is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court." *Dainippon*, 142 F.3d at 1272-73. The court in *Central Tools* did not adopt this categorical approach. *Central Tools*, 381 F. Supp. 2d at 80. Instead, it held that the second Rule 19(b) factor required joinder of the patent owner because the court could not shape its declaratory relief judgment such that it invalidated only part of a patent claim. *Id.* As noted, the issue raised in *Central Tools* is only a problem if Houghteling retained an interest in a partially-transferred claim. There is no evidence that such a partial transfer has taken place.

The third factor, adequacy of judgment, also favors Dex because Dex seeks only declaratory relief. *See Dainippon,* 142 F.3d at 1273 ("The third factor, adequacy of judgment, favors maintenance of the suit in [the patent owner's] absence because a declaration of invalidity or noninfringement would fully serve [the alleged infringer's] interest in ensuring that it is free from claims of patent infringement irrespective of [the patent owner's] absence."); *see also Central Tools*, 381 F. Supp. 2d. at 80 (quoting *Dainippon*, 142 F.3d at 1273).

If, as defendants contend, Dex could bring this suit in a Colorado district court, the fourth factor, availability of an alternate forum, would obviously weigh against Dex. "However, the fact that an alternative forum exists does not automatically warrant dismissal of the case given Rule 19(b)'s mandate to consider all of the relevant factors and the equities of the situation." *Dainippon*, 142 F.2d at 1273. Moreover, the fact that the patent owner's interests will be adequately protected by the licensee "strongly compels" the conclusion that the patent owner is not indispensable. *Id.*

Since Houghteling's interest will be adequately protected by Basic Comfort and only the

10

potential availability of an alternative forum weighs in favor of dismissal, this Court concludes that Houghteling is not an indispensable party.

### III.   Venue

Defendants argue that the proper venue under 28 U.S.C.A. §1391(b)(2) is Colorado, not California, because Houghteling resides in Colorado and all the work on the patent and license agreement took place in Colorado.[5] This contention, however, is in opposition to Ninth Circuit law which holds that the proper venue is the district where the alleged infringing acts took place. *See U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 642 F.2d 193, 195 (9th Cir. 1982). The alleged infringing acts in this case are Dex's sale of particular baby products. Those sales were made in California, not Colorado. Opp. Mot. at 1:25-28. This Court therefore concludes that venue is proper.[6]

Defendants argue in the alternative that this case should be transferred to a federal court in Colorado. Defendants, who cite no cases in support of their position, contend that a trial in this Court would unduly inconvenience Houghteling and Basic Comfort. More specifically, Houghteling, a Colorado resident, and employees of Basic Comfort, a Colorado corporation, would be required to travel to California for the trial. Defendants deem such travel expenses "unduly burdensome and expensive." Def. Mot. at 12. Defendants also assert, with minimal support, that the infringing acts were committed in Colorado, not California.

Defendants' arguments fail to overcome the significant presumption in favor of plaintiff's choice of forum. As several courts have noted, a mere shifting of inconvenience from defendant to plaintiff is not allowed under 28 U.S.C.A. § 1404(a). *See Decker Coal v. Commonwealth Edison Co.*, 805 F.2d at 843 (finding that transfer of case from Montana to Illinois was not appropriate because there were witnesses living in both locations); *see also Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085,

---

[5] Defendants do not argue that venue is improper with regard to Basic Comfort

[6] Defendants' reliance on *Jamba Juice Co. v. Jamba Group, Inc.*, 2002 WL 1034040 (N.D. Cal 2002) is misplaced. Although the court in *Jamba Juice* held that the activities of the defendant, not the plaintiff, are the relevant focus of a venue dispute, the defendant in *Jamba Juice* was the alleged infringer while the plaintiff was the trademark owner - the reverse of the situation in this action. *Id.* at 2.

11

1095 (N.D. Cal. 2003) (rejecting transfer to Central District of California because witnesses resided in both districts and inconvenience to plaintiff in the new district was "about the same" as that of the defendant in the Northern District); *A Slice of Pie Prods., LLC v. Wayans Bros. Ent.*, 392 F. Supp. 2d 297 (D. Conn. 2005) (refusing to transfer litigation from Connecticut to California even though more parties resided in California and only some material events occurred in Connecticut). The location of events giving rise to the action is also an important factor in a court's decision to transfer a case. *Decker Coal*, 805 F.2d at 843.

A shift of venue from California to Colorado would inconvenience Dex "about the same" as the current venue inconveniences Basic Comfort. *See Shropshire*, 294 F. Supp. 2d at 1095. Defendants concede that Dex is a California-based corporation that has no greater presence in Colorado than Basic Comfort has in California. Reply Brief at 2 n.1. In addition, although Houghteling, other likely witnesses and important documents reside in Colorado, other relevant witnesses (such as Dex employees) and key documents reside in California. In other words, Dex and its witnesses would incur approximately the same level of expenses from a change in venue as Basic Comfort and Houghteling currently face. Moreover, the key events giving rise to this action - the sale of allegedly infringing products - took place in California.

The Court therefore concludes that transfer of venue would not be appropriate.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion to dismiss Houghteling for lack of personal jurisdiction, and DENIES defendants' motion to dismiss or transfer as to defendant Basic Comfort, Inc. (Docket No. 28).

**IT IS SO ORDERED.**

Dated: June 23, 2006

SUSAN ILLSTON
United States District Judge